May it please the Court, my name is Beth Baumstark and I'm representing the appellant Wagner Harmon who's in the courtroom with us today. Wagner Harmon is entitled to the return of the money that he was forced to repay the government with interest because he was eligible for farm payments under the main issues here is the definition of person in part 1400 of the regulations. It contains four parts, only the first two of which are in issue in this case. The first part is extremely clear. It says a person is an individual or That's the definition of person that's to be used in eligibility determinations. The second part of the definition is also clear. It states that to be considered a separate person, an individual or entity must have a separate interest in the and maintain separate funds or separate accounts from any other entity or individual. This is the portion of the definition that's used to determine if one is a separate person for payment limitations purposes. Now the government's position in this case is that in order to qualify to receive farm program payments, an individual or entity must be a separate person. There is no requirement of that in either the regulations or the statutes. Eligibility is based upon whether an individual or entity is actively engaged in farming. But your client, when filing the initial farm operating plan, didn't say Walter Harmon, also known as Little Muddy, LLC. No, no, because they are separate entities. He said I'm filing this as an individual Walter Harmon, correct? Wagner Harmon, yes, your honor. Sorry. And however, he did very honestly and very forthrightly state on his farm operation plan that there was a related entity in which he had an interest and that was Little Muddy, LLC. So that was forthright from the beginning, that they were a related entity. So your argument is this was no mystery to the government? That's correct, your honor. Now to be actively engaged in farming, the individual or entity is required to provide a significant contribution of capital, land, or equipment, or a combination of the three, and active personal labor or active personal management or a combination of the two. There is no requirement that capital be provided at all in order to be actively engaged in farming. The actively engaged in farming is the determination of eligibility for program payments. Once you're eligible for program payments, then there's a determination of whether you and any other entities in which you have interest are separate or one person. Now, Wagner Harmon was determined to be actively engaged in farming, both initially in 2005 and at the end of the end of year review when the review team made the results known in 2010. He was significant contribution of equipment and active personal labor and active personal management. He's the farmer. He's the farmer, right. There's no question about that. Right. And the county committee also found in its minutes that he met the actively engaged in farming criteria. Now the government's position of trying to read a separate person requirement into the eligibility determination based on actively engaged in farming is inconsistent with both the statutes and the regulations and the context. If we look at the structure of all parts, subparts. Subpart A is the general provisions. Subpart B is the person determination, which is the determination of whether you're a separate person for payment limitation purposes. And subpart C is the subpart that deals with eligibility and whether you're actively engaged in farming. So your argument is it doesn't make any difference whether during the course of the farm operations, whether transactions were in the name of Mr. Harmon or of Little Muddy LLC. Because your argument is that both together were disclosed and they meet the regulatory definition. That's right, your honor. They are both eligible. They are both actively engaged. Now Little Muddy was not a part of the determination in this case. It was not brought in to determine whether it was actively engaged. You know, that had been determined in the prior administrative proceeding and was not looked at when they were looking at Wagner-Harmon and whether they were separate. There is nothing in subpart C, which is the part on eligibility and actively engaged, that references either one person or separate person. That language comes in under subpart B, which is one person or more than one person for payment limitations purposes. Now there's no statute or regulation that says that in order to be eligible for payments you must be a separate person. Likewise, there's nothing in the statute or regs that says that if you're not a separate person, you cease to be a person. But yet that's what the government's claiming. Do I understand correctly that during the course of the farming operation covered by this program, that on one or more occasions Mr. Harmon used Little Muddy LLC to obtain discounts on supplies, seeds, whatever necessary to the farming operation that he as an individual could not get. Is that correct? That's correct, Your Honor. And that's a standard practice and that was in the record in terms of bulk purchasing to get additional discounts through bulk purchasing, whether it be seed or chemicals or a lot of the different inputs. So whether that's consistent or inconsistent with the requirements of this program, it inured to the benefit of the program by receiving items at a discounted price. That's correct, Your Honor. And that FSA has said, and throughout the administrative proceedings here, has said that bulk purchasing is an acceptable practice and does not mean that you're combined as one person. In fact, you can do bulk purchasing with a neighbor that you have no interest in their operation as well. Am I also correct in the understanding that if you reconstructed all of the payments received during the course of the operation of this farming program and isolated those ones that Mr. Harmon was entitled to receive as an individual, discounted any where Little Muddy or some other entity was used, that the $136,000 would have been what he had been entitled to if he had done all of this in his own name? I hope I'm being clear with the question. If I understand your question correctly, and I think I do, the answer is yes. The National Basketball Association, we call this no harm, no foul. Right, and I think that's exactly what we have here because when you're making the per person determination, and Section 1400.1, Part D, specifically states that this part is used to determine whether if individuals and entities are to be treated as one person together or as separate persons for payment limitations purposes. It doesn't say whether they're separate persons or not persons. And if you're determined to be one person, then you and the together with the other entity that you're determined to be one person with is entitled to only the maximum amount of farm program payments per program per year that an individual person could get. And Little Muddy LLC and Wagner Harmon never exceeded that amount in any program in any of the years. And so there was never any excess government funds spent. Do you want to save some time for rebuttal? I do. I'd like to save three minutes, but I have one more point I'd like to make here. And that's that Wagner Harmon and the LLC also met the requirements as separate persons as they're set out in the regulations. They had separate operating loans. They had separate bank accounts. They had no cross-collateralization of anything. And that's all that the regs require. And it's arbitrary and capricious for the agency to determine that they are not separate persons simply because the local FSA office would have preferred different accounting standards that weren't part of the regulations. They weren't even part of the handbook provisions used to for the agency to follow for consistency purposes. Thank you. Thank you. I'm going to save the remaining time. May it please the Court, my name is Tim Tatarka, representing the United States Department of Agriculture. This case reaches this course after a thorough process of review, starting with an initial FSA County Committee determination, reconsideration of that determination, followed by an appeal to the National Appellate Division, with a hearing where Mr. Harmon was represented by counsel, a determination, an appeal from there for a director's review, not to mention, of course, the summary judgment decision below. Given both the thoroughness of this review process and the complex and highly technical nature of FSA program regulations, the agency's determination is entitled to substantial deference. So the narrow question for this Court is whether Mr. Harmon has been able to show that the agency was arbitrary, capricious, or contrary to law in making its determination. This is a civil case, correct? This is not a criminal case? Yes, Your Honor. A civil case? Yes. Now, what would be wrong with a county's determination of which farm subsidy payments Mr. Harmon was eligible for and which he was not eligible for, coming up with the number and deciding it from there? What's wrong with that? I think the problem with that, Your Honor, is that Mr. Harmon applied for these funds, the funds that he applied for, as a separate individual, separate and distinct from any other individual or entity, and the agency's entitled to safeguard its funds and make sure that individuals are eligible for what they, for the programs and funds that they're entitled to. Did he get anything he wasn't entitled to? The answer to that is no, isn't it? Well, there's sort of two questions there. I only got one question out of that. The answer is, did he get anything extra? He did not get anything extra, but there was the potential for him to get something extra. Well, there might have been the potential, but he didn't like take it and hide it under the mattress. He got what he was entitled to, and so now you want to take it away because there was a potential that he might have got more, but you didn't give him more. Is that just the argument? He wasn't, excuse me, I may have misstated, he wasn't entitled to the statute and the regulations. He wasn't entitled to those funds because he didn't apply for those funds. Well, the way they describe it, a person is defined as either an individual or entity actively engaged in farming with respect to such operation. So either one of those could be a person, right, according to the statute, or an individual or an entity. To be considered, to be, yes, yeah. Actively engaged in farming with respect to such an operation. So was he an individual or entity actively engaged? He wasn't a person. So CFR 1400.201 says, to be considered a person who is eligible to receive payments with respect to a particular operation, a person must be an individual or entity actively engaged. Okay. And the term person. Was he an individual or entity actively engaged? He wasn't a person under the statute. A person is an individual or an entity. It says, and maybe I'm reading it wrong, it says a person must be an individual or entity actively engaged in farming. But person is a defined term under the part. You have to meet the way the agency interprets these statutes and the agency's interpretation is entitled to deference by this court. You have to meet both the person requirement and the definition of person in 1400.3, as well as the actively engaged in agriculture, or actively engaged in farming determination. Those are separate determinations, and both of those have a basis in the statute. If you go to 7 U.S.C. 1308-1B, which is included in the appellate's appendix. Mr. Harmon, in applying for benefits under this program, indicated that he was engaged in farming and also disclosed his relationship with and to Little Muddy at LC, didn't he? He indicated that he was a separate person, and both he and Little Muddy applied as separate persons for the purpose of... And is it correct that during the course of the farming operation, he used Little Muddy's ability to boat purchase to save the farming operation money? He... Yes or no? Yes, he did use the boat. He did make payments through Little Muddy Ranch. So do we categorize that as no good deed goes unpunished, or what? I don't understand what you mean by a good deed. He saved himself money. He saved the operation money. That's what the government was supplying funds for, to maintain this farming operation, and he saved that money by taking advantage of L.L. Muddy's abilities for boat purchases, correct? He did save himself money. That's correct. And the purpose of these regulations are to provide funds, but here's the important distinction, I think. There's... Both Little Muddy and Mr. Harmon applied as separate persons, and as a part of that, they have to maintain separate funds or accounts. Mr. Harmon claimed that he was growing sugar beets separate from LMR, but LMR... The LMR account paid for the chemicals and fertilizer for the sugar beet operation, paid for the labor for the sugar beet operation, and there was no bulk purchasing discount for that, and paid for the beet seed. Did L.L. Muddy receive funds it was not entitled to? L.L. Little Muddy was... Yes, it did. There was an agency determination that it was not separately entitled to funds, and that was a proceeding that happened prior to this one. And was it ordered to repay those amounts? I believe so, Your Honor. Is that in the record? The record of this case? There's reference to the fact that Little Muddy and Garth Harmon were found to be ineligible in this case. That's in the record in this case. The repayments I assume happened, but that is not in the record. I would like to return to the language of the statute, because I do think that's important. 7 U.S.C. 1308-1 says, to be separately eligible for program payment benefits with respect to a particular farming operation, a person must be an individual or entity described in Section 1308E2A of this title, which is the regulations that provide the definition of person, and actively engaged in farming. It's worth comparing that language with the language in 1400.201, because the language from the statute says, to be separately eligible for program, farm program payments with respect to a particular farming operation, a person must be an individual or entity, and actively engaged in farming. The language in the regulation says, to be considered a person who is separately eligible, or excuse me, a person who is eligible to receive payments with respect to an operation, the person must be an individual or entity actively engaged in farming. The word separately, which is included in the statutory language, isn't included in the regulatory language, because that's covered under the definition of person in 1400.3, and the agency interprets that separateness requirement, which again, comes from Congress. It has taken that language and included it in the definition of person in 1400.3, paragraph 2. What Mr. Harmon did, as I was saying, Mr. Harmon, Little Muddy LLC paid for the expenses for Mr. Harmon's sugar beet operation, and then when Mr. Harmon received the payments for the sugar beet operation, both the direct payments and the crop insurance payments, he immediately passed those funds through to LMR, both the same day and to the penny. So this isn't a case where these are two separate operations and Mr. Harmon was reimbursing certain expenses to Little Muddy. This is a case where Little Muddy incurred the bulk of the expenses and received the proceeds for that operation, but they weren't operating as two separate persons, excuse me. Excuse me for interrupting you, I'm sorry, but you've told us that there was a separate proceeding involving Little Muddy, correct? Yes, Your Honor. And a separate determination made whether it received farm program payments, subsidies, that it was not entitled to, and that's over and done with? Yes. And that's not part of this proceeding? That, and the same result obtained, there's an important distinction I want to make clear. I did think I misstated before. As a matter of law, the agency came to the same determination with respect to Mr. Harmon, or Garth Harmon and LMR, that they weren't entitled to funds. Separately, as a matter of equity, the agency determined that they were allowed to keep those funds as a matter of equity. That, the equity question, isn't reviewable by this court. Could you just shed a important factual distinction between the cases? Garth Harmon and Little Muddy Ranch contended that the agency, they relied on agency information to, and acted in good faith in the regulations. The agency representatives didn't testify in that case. In the hearing, this case followed from that. In the case, the FSA agents testified, as well as Mr. Harmon and his brother, and the National Appellate Division credited the FSA agents' testimony. So it was a different factual record? It's a different factual record, again, and a more in-depth one. And again, the credibility determination there, which is entitled to deference from the National Appellate Division, found that the FSA agents were credible in explaining to Mr. Harmon the importance of maintaining separate funds and accounts. If we reverse here, to what extent, what is going to be the impact, you think, on the agency going forward? Well, the definitions, these regulations govern the program payments from 2005 to 2008. There are different regulations, which actually are relevant, or at least relevant, as an intellectual matter here. Starting with, after the definition of person, to be just an individual, and then separately discusses entities. And when it did that, it took this separate, the requirement to maintain separate funds or accounts, which had been in the definition of person, and included it in 1400.201. It became subsection C of that section, which I think is illustrative of the fact that the, and the agency practice continued to require separate funds or accounts. So this case would be a one-off in any event? I know you don't like that term, and I'm not terribly fond of it either, but... I can't say what... You're not aware of any other cases in the pipeline arising under the pre-2008 regulations, are you? I am not personally aware of any. But I do think, again, that the agency's interpretation of its regulations is entitled to deference here, and that the definition that Mr. Harmon advocates would not be administrable for the agency, to apply one definition of person that doesn't require maintaining separate funds or accounts for purposes of eligibility, for purposes of providing funds, and then a separate definition of person that does require separateness for raising this question, addressing the question of what the caps would be. With that, Your Honor, the... Let me just ask what came up before. Since the agency's not out any money, as I understand it, is that correct? Well, it's difficult to say what the answer is. They're not out any money. Do you think this might be the kind of case that ought to be looked at in mediation, since any interpretation is of a different era in terms of the No, Your Honor. I think the law and the regulations are clear. It would be a separate question regarding the equitable determination. The equitable determinations were different, but that's not reviewable by this court under 7 U.S.C. I had it right the first time. There are several points I'd like to respond to. The first, in terms of deference to the agency. I think it's important to recognize that the position that the agency is taking in this litigation is not the same in terms of the agency. The county committee, in its minutes from July 2010, and that is in the record, states that Wagner Harmon can meet the qualifications for actively engaged in farming. Now, the mistake that the county committee made is that they found that being a separate person was a separate requirement to be eligible for funds. They did not relate that, though, to the actively engaged in farming, which is the argument the government is making in the litigation, in their litigation position. It is not entitled to deference. Also, because their interpretation is not consistent with the regs and statute, it also would not be entitled to deference under case law from the Ninth Circuit and other circuits as well. Also, I think it's important to note we heard a lot of discussion by the government's attorney in terms of Little Muddy paying for sugar beet seed, for seed and chemicals for sugar beets, and for labor. The distinction that they did not make was that for all of those expenses, most of which were for bulk purchasing discounts, Wagner Harmon either prepaid or, in a reasonable period of time, reimbursed Little Muddy for. So at the end of the year, all of Wagner Harmon's individual farming operations expenses were paid for by Wagner Harmon, and all of Little Muddy's operating expenses were paid for by Little Muddy. Now, the government didn't like the idea that when Wagner Harmon received a farm program payment on sugar beets, he used that money to prepay some of the expenses for bulk purchasing that Little Muddy was going to pay on his behalf. Is that what the government characterized as unexplained transfers? That's what they were saying. Well, there's no difference because when he got a program payment, he immediately turned it over to Little Muddy. Once you receive an insurance payment, a government payment, a salary, it's yours to do with as you see fit. And if you use that to prepay or reimburse funds for bulk purchasing, there's certainly nothing wrong with that or nothing suspect with that. Thank you. Thank you both for your argument today. And the case just argued of Harmon v. The United States is submitted and we're adjourned. All rise.
judges: Hawkins, McKeown, Davis